UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LEANNE B., PARENT TO MINOR A.B., :
       Plaintiff, :
        :
      v. : C.A. No. 23-100-MSM
        :
MARTIN O'MALLEY, :
COMMISSIONER, SOCIAL SECURITY :
ADMINSTRATION, :
       Defendant. :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Before the Court is the motion of Leanne B. ("the mother") on behalf of her now eight-year-old son, A.B. ("Plaintiff"), for reversal of the decision of the Commissioner of Social Security (the "Commissioner") denying his application for supplemental security income ("SSI"). ECF No. 10. As relevant here,[1] Plaintiff has been diagnosed with "Unspecified Behavioral and Emotional Disorder of Childhood"; unspecified disruptive behavior, impulse-control and conduct disorder (provisional); hyperkinesis (at risk for attention deficit hyperactivity disorder ("ADHD")); speech articulation disorder; anxiety disorder; and sensory processing difficulty/disorder. Tr. 384, 436, 773. While Plaintiff's mother consistently reported to health care providers and in connection with Plaintiff's SSI application that Plaintiff suffers from autism spectrum disorder,[2] the administrative law judge ("ALJ") correctly found that

---

[1] Plaintiff has other diagnoses such as asthma, which is described in the medical record as "mild." E.g., Tr. 304. Plaintiff has not challenged the ALJ's treatment of these conditions. They will not be discussed further.

[2] During the ALJ's hearing, the mother testified that Plaintiff would shortly be diagnosed with autism and would be put on an individualized education plan ("IEP"). Tr. 44 ("he is in the process of being replaced into a special needs class"); Tr. 45, 55 ("they are . . . currently revising [the IEP], once I get that autism report in November"); Tr. 56 ("The part we're waiting for is his autism level"); see Tr. 34 (attorney advises ALJ that "Claimant is in the middle of a neuropsych evaluation," with the report expected in November 2021). The ALJ urged the attorney to submit such

Plaintiff has never been diagnosed with autism. See, e.g., Tr. 384 ("Autism ruled out"). Plaintiff argues that one of his disabling conditions is obsessive-compulsive disorder ("OCD"), but it also has never been diagnosed. See Tr. 434 ("[s]ymptoms of . . . [OCD] were not presented").

Plaintiff contends that the ALJ erred in relying on the non-examining expert psychologists (Dr. Jeffrey Hughes and Dr. Clifford Gordon) and in rejecting as minimally persuasive the opinion of the special education classroom teacher (Ms. Cara McHugh Avila) to find that Plaintiff has not been disabled at any relevant time because his functional limitations in five of the six functional domains listed in 20 C.F.R. § 416.926a(b)(1) are "less than marked."[3] ECF No. 10 at 7-10. The Commissioner's countermotion asserts that the ALJ's decision is consistent with applicable law and sufficiently supported by the evidence. ECF No. 15. The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.  **Background**

Plaintiff was born prematurely during the thirty-fifth or thirty-sixth week of pregnancy. Tr. 379, 431, 459. By the age of three (in 2018), he was receiving occupational therapy ("OT") services at Hasbro Children's Hospital ("Hasbro") for concerns related to sensory processing, mouthing of objects, difficulty with personal space, poor sleep and difficulty with social interactions. Tr. 361. Although Plaintiff was noted as making "steady" and at times "remarkable" progress, these OT services were continued for a year ending in November 2019, (through Plaintiff's commencement of preschool in the fall of 2019 at the Meeting Street

---

a report if it was completed before the decision issued. Tr. 35 ("[Y]ou're welcome to submit it"). The decision did not issue until February 1, 2022, but no new report was submitted. Nor did Plaintiff submit anything establishing either a diagnosis of autism or that Plaintiff had been placed on an IEP or in a special-needs classroom.

[3] The sixth domain is health and physical well-being. The non-examining expert physicians found less-than-marked limitations in this domain, which finding the ALJ adopted. Plaintiff has not challenged this determination.

2

School).  Tr. 348-49; see Tr. 286.  Meanwhile, in April 2019, Plaintiff was assessed at Hasbro's Child Neurodevelopment Center on referral by the primary care physician for sensory and behavioral concerns, resulting in diagnoses of hyperkinesis (at risk for ADHD), speech articulation disorder, and sensory processing difficulty; autism was ruled out.  Tr. 377-84.  In June 2019, Plaintiff was evaluated again by psychologists at Gershon Psychological Associates, LLC, who diagnosed "Unspecified Behavioral and Emotional Disorder of Childhood" and possible ("Rule-out") ADHD.  Tr. 769, 773.  In the fall of 2019, Plaintiff entered preschool at Meeting Street School.  See Tr. 285-86.  On March 30, 2020, Plaintiff's mother filed his SSI application and on November 4, 2020, a state agency expert psychologist (Dr. William Unger) performed an examination resulting, *inter alia*, in diagnoses of anxiety disorder; unspecified disruptive behavior, impulse-control and conduct disorder (provisional); and sensory processing disorder.  Tr. 15, 430, 434, 436.  Although Plaintiff had started school (kindergarten) by the time he was seen by Dr. Unger, Dr. Unger received no school records; the sources he relied on for his report consist of his clinical examination of Plaintiff and information provided by the mother.  Tr. 430-31.

      The record to this point, including the evaluation reports, the treating records of the primary care and other healthcare providers and an educational plan from Meeting Street School,[4] were examined by the non-examining expert psychologists, Dr. Hughes and Dr. Gordon.  Tr. 73-74, 81-82.  Both psychologists found less-than-marked limitations in the first five domains (at the initial phase, Dr. Hughes found no limits in the domain of acquiring and

---

[4] The Meeting Street plan, which is the only educational record in the file reviewed by the non-examining expert psychologists, is not an individualized education plan ("IEP") and contains no information about how Plaintiff was functioning in preschool.  See Tr. 285-93.

3

using formation; on reconsideration, Dr. Gordon found less-than-marked limits).[5] Tr. 76-77, 83-84. This record was also reviewed by two non-examining expert physicians, who both found less-than-marked limits in the sixth domain (health and physical well-being). Tr. 77, 84. The second of the two psychologists (Dr. Gordon) signed his administrative findings on December 30, 2020. Tr. 84. Coupled with his own review of the evidence, the ALJ relied on these findings as foundational to his decision. Tr. 18-19, 22-23.

The record contains significant records related to Plaintiff's ability to function in the first five domains that the non-examining psychologists did not see and therefore did not consider in making their findings.

First, Plaintiff's kindergarten (2020-2021) report card, largely prepared by one of Plaintiff's classroom teachers (Ms. Nancy Waslick), was not provided until shortly before the ALJ's hearing. Tr. 243-52. As the ALJ supportably found, overall, the report card reflects some improvement, approaching or meeting expectations in most academic areas, although it also includes the comments that "behavior impacts his learning" and "needs many reminders and prompting to control his body and his words." Tr. 20. However, as Plaintiff points out, in the behavioral areas of following directions, working well with others and demonstrating self-control, the report card reveals Ms. Waslick's assessment that Plaintiff did not improve at all over the course of the 2020-2021 school year, but sustained a performance at the lowest level – does not meet expectations. Tr. 246.

---

[5] Without explaining how the difference is conceivably consequential, Plaintiff asks the Court to remand the case because Dr. Hughes found no limits in the domain of acquiring and using information, while Dr. Gordon and Ms. Avila (the special education teacher) found less-than-marked limits, and the ALJ did not explain his decision adopting the latter finding. ECF No. 10 at 7-9. This argument is not well-founded. With all of the findings and opinions in agreement that the limitations applicable to this domain are neither marked nor extreme, the difference between the two psychologists is not material to the outcome of the case.

Second, Plaintiff's 504 Plan (dated March 12, 2021) was not submitted until after the ALJ's hearing.  Tr. 15, 254.  It reflects interventions to address sensory concerns, impulse control and peer relationships.  Tr. 254-55.  As the ALJ notes, the 504 Plan also confirms that Plaintiff was still being managed in the regular classroom setting and he was not enrolled in special education.  Tr. 20.

Third, as revealed by the 504 Plan, Ms. Avila was Plaintiff's other classroom teacher (described by the ALJ as the "special education kindergarten teacher," Tr. 21) throughout the kindergarten year (2020-2021).  Tr. 254.  Submitted well after the findings of the non-examining expert psychologists were signed is her Functional Assessment of Plaintiff, signed on September 13, 2021, a few weeks before the ALJ's hearing.  Tr. 15, 761-63.  In this Assessment, Ms. Avila reached the same conclusion as Dr. Gordon in finding Plaintiff's learning limits (the first domain – "acquiring and using information") to be less than marked.  Tr. 761.  Further, as a teacher and not a medical expert, she did not opine on health (the sixth domain).  However, noting Plaintiff's diagnosis of unspecified behavioral and emotional disorder (per the Gershon evaluation), Ms. Avila opined based on her observations of Plaintiff's "functioning according to his/her age-mates," and found marked functional limits[6] in Plaintiff's ability to attend and complete tasks, interact with others, move about and manipulate objects, and care for himself.  Tr. 761-63.  For each of these domains, her opinion includes specific comments explaining her conclusions.  Id.

Fourth, the non-examining experts were unaware of a school-based mental health treatment plan based on observations by a clinician, school personnel and the mother, developed

---

[6] Importantly, Ms. Avila's severity opinions are based on Social-Security-defined terms.  Tr. 761.  Thus, this is not a case where the teacher's assessment that a child's impairment is "serious" or "very serious" may be discounted because the terms used by the teacher are not necessarily equivalent to "marked" as used in Social Security parlance. See Christina B. v. Comm'r of Soc. Sec., No. 5:19-CV-1192 (ATB), 2020 WL 5848732, at *7 (N.D.N.Y. Oct. 1, 2020).

for Plaintiff by Family Service of Rhode Island ("FSRI") on March 28, 2021.  Tr. 457-66.  This plan is focused on developing coping skills for Plaintiff to utilize when experiencing emotional/behavioral dysregulation and to decrease aggressive behaviors.  Tr. 457-58.  An FSRI mental status examination reflects clinical observations of silliness, hyperactivity, impulsive behavior, decreased flow of thought process and short attention span.  Tr. 462-63.  In contrast to the non-examining psychologists' finding of "no indication of aggressive or hostile b[ehavior] towards peers," Tr. 76, 83, the FSRI plan notes that "[Plaintiff] hits himself and others when triggered" and that he needs "psychoeducation about boundaries."  Tr. 458.

     Fifth and finally, although the expert psychologists relied on Plaintiff's improvement with OT services received in 2018-2019, Tr. 77, 84, they were not aware that OT services were deemed necessary again and that they resumed in March 2021.  Tr. 73-74, 671.  These 2021 OT services focused on body movement and awareness, motor skills, and self-care skills, such as the ability to dress himself.  Tr. 752, 754.  Plaintiff's ongoing need for such OT services appears to have continued throughout the remaining period covered by the record, although he was noted at times as making "great" progress.  Tr. 575.  Ms. Avila's Functional Assessment specifically relies on the ongoing need for these OT services as foundational to her opinion of marked limits in the ability to move about and manipulate objects.  Tr. 762-63.  These records reflect that the second round of OT services were intensive, with one or more sessions per month, including during the summer.  See Tr. 550-96, 605-758.  The OT notes not seen by the non-examining experts reflect such reports as that Plaintiff spit at his teacher, tried to cut himself with scissors, "pushed another child during recess," and was suspended from kindergarten in April 2021.  Tr. 676, 704.

6

As the Commissioner points out, the ALJ's decision does not ignore this post-file review evidence. To the contrary, except for the FSRI treatment plan (which the ALJ did ignore), the ALJ's decision devotes considerable attention to his consideration of the 2020-2021 report card, the 504 Plan, the 2021-2022 OT records and Ms. Avila's 2021 Functional Assessment. Tr. 20-22. Based on his lay analysis of these materials, the ALJ found that (apart from Ms. Avila's Assessment) this evidence is all consistent with what was in the record that the non-examining expert psychologists reviewed. Id. As to Ms. Avila, the ALJ found that her opinions – marked limits in four of the domains (attending and completing tasks, interacting with others, moving about and manipulating objects, and caring for himself) – are minimally persuasive because they are not supported by Plaintiff's contemporaneous educational and medical records, including the report card (which showed some improvement) and the OT records (which showed significant progress). Tr. 21-22.

## II. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Hum. Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam). Once the Court concludes that the decision is supported by substantial evidence and that the Commissioner correctly applied the law, the ALJ's decision must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health &

Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).  The determination of substantiality is based upon an evaluation of the record as a whole.  Brown, 71 F. Supp. 2d at 30.  The Court may not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Hum. Servs., 877 F.2d 148, 153 (1st Cir. 1989) (per curiam)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Rodriguez, 647 F.2d at 222).

### III. Childhood Disability Determination

A child under age eighteen is considered disabled and entitled to SSI benefits if the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The Social Security regulations include a three-step test for the purpose of adjudicating children's disability claims under this standard.  20 C.F.R. § 416.924(a)-(d).  That test requires the ALJ to determine: (1) whether the child is engaged in "substantial gainful activity," (2) whether the child has "a medically determinable impairment[ ] that is severe," and (3) whether the child's "impairment(s) . . . meet, medically equal, or functionally equal [a] list[ed impairment]."  20 C.F.R. § 416.924(b)-(d); see generally Fleetwood v. Colvin, 103 F. Supp. 3d 199, 202-03 (D.R.I. 2015).  "The claimant seeking [childhood] benefits bears the burden of proving that his or her impairment meets or equals a listed impairment."  Hall ex rel. Lee v. Apfel, 122 F. Supp. 2d 959, 964 (N.D. Ill. 2000) (citing Maggard v. Apfel, 167 F.3d 376, 380 (7th Cir. 1999)).

In considering whether a child has an impairment or combination of impairments that functionally equals the severity of a listing, the six functional equivalence domains set forth in the regulations must be considered. 20 C.F.R. § 416.926a(b)(l). They are:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for oneself; and

6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi); SSR 09-2p, Title XVI: Determining Childhood Disability – Documenting a Child's Impairment – Related Limitations, 2009 WL 396032, at *1-2 (Feb. 18, 2009). To qualify as functionally equivalent to a listing, the child's impairment "must result in [either] 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). The child has a "marked" limitation – i.e., one "that is 'more than moderate' but 'less than extreme'" – when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." Id. § (e)(2)(i). The child has an "extreme" limitation when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." Id. § (e)(3)(i). According to the guidance in SSR 09-2p, this is a complex and nuanced analysis that requires consideration of the "whole child," including an examination of the child's level of development and functioning in relation to unimpaired peers of the same age, and how the child functions at home, in school, and in the community in each of the six domains without the supports (such as

9

an IEP) that are not needed by unimpaired children of the same age.  See generally, SSR 09-2p, 2009 WL 396032, at *1-11.

### A. Opinion Evidence

To assess opinion evidence, an ALJ must consider the persuasiveness of medical opinions in the case record.  See 20 C.F.R. § 416.920c.  The most important factors are supportability and consistency; these are usually the only factors the ALJ is required to articulate.  20 C.F.R. § 416.920c(b)(2); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019).  Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding[ ] is with other evidence in the claim."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017).  Weighed in light of the evidence of record, the ALJ may consider the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding.  See 20 C.F.R. § 416.920c(c)(1)-(5).

The Commissioner can also consider evidence from "other sources" to show the severity of the claimant's impairments.  SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006); see Christina B. v. Comm'r of Soc. Sec., No. 5:19-CV-1192 (ATB), 2020 WL 5848732, at *6-11 (N.D.N.Y. Oct. 1, 2020) (discussing evidence from special education teacher).  In childhood disability cases, teachers and occupational therapists are considered "other sources" whose opinions cannot "establish[ ] the existence of [a] medically determinable impairment," but "can also be very important to our understanding of the severity of a child's impairment(s) and how it affects day-to-day functioning."  SSR 09-2p, 2009 WL 396032, at *3-4 (emphasis supplied).  The applicable guidance requires adjudicators to try to get evidence of educational interventions

and school records whenever they are needed to make a determination or decision regarding a child's disability. Id. at *4.

An ALJ reasonably may rely on the non-examining sources' findings and give a non-medical source, such as a teacher's evaluation, little weight when, for example, the latter consists of checks on a blank form indicating marked limitations in all six domains without further explanation. L.H. ex rel. T.L.H. v. Colvin, No. 1:14-cv-00939-JMS-TAB, 2015 WL 2155687, at *7 (S.D. Ind. May 7, 2015). On the other hand, the opinion from a teacher may outweigh the opinion from a medical source if the non-medical source has seen the individual more often, has greater knowledge of the individual's functioning over time, has better supporting evidence and is more consistent with the evidence as a whole. Conlin ex rel. N.T.C.B. v. Colvin, 111 F. Supp. 3d 376, 388 (W.D.N.Y. 2015).

### B. Reliance on Experts

An ALJ cannot render a medical opinion in the face of conflicting and inconsistent medical evidence without the assistance of a medical expert. Santiago v. Sec'y of Health & Hum. Servs., 944 F.2d 1, 7 (1st Cir. 1991) (per curiam) ("[A]n expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person."). If the medical evidence is such that a "reasonable mind might accept [it] as adequate to support a conclusion" of disability, the ALJ cannot rest on his untutored lay analysis to interpret it otherwise. Sherry B. v. Saul, 518 F. Supp. 3d 590, 591 (D.R.I. 2021) (cleaned up). Thus, it is error for an ALJ to deny benefits in reliance on a consulting or a non-examining expert physician or psychologist who, despite expertise, was not privy to parts of the medical record that support the claimed limitations. Padilla v. Barnhart, 186 F. App'x 19, 22-23 (1st Cir. 2006) (per curiam); Virgen C. v. Berryhill, C.A. No. 16-480 WES,

2018 WL 4693954, at *3 (D.R.I. Sept. 30, 2018); Cruz v. Astrue, C.A. No. 11-638M, 2013 WL 795063, at *13 (D.R.I. Feb. 12, 2013), adopted, 2013 WL 802986 (D.R.I. Mar. 4, 2013).  In such circumstances, without procuring testimony from a medical expert who has interpreted the entire medical file, the ALJ is improperly substituting his lay judgment for a necessary expert medical opinion. Hall v. Colvin, 18 F. Supp. 3d 144, 152 (D.R.I. 2014); Jessica S. v. Kijakazi, C.A. No. 21-75MSM, 2022 WL 522561, at *3 (D.R.I. Feb. 22, 2022), adopted, 2022 WL 834019 (D.R.I. Mar. 21, 2022).  However, if the post-file review evidence shows relatively little impairment, an ALJ can render a commonsense judgment about functional capacity "even without a physician's assessment . . . as long as the [ALJ] does not overstep the bounds of a lay person's competence." Hall, 18 F. Supp. 3d at 151 (cleaned up).  Courts must recognize that every consultant report necessarily is a snapshot of the claimant's condition during a discrete period of time; in itself, that does not prevent an ALJ's reliance on it as substantial evidence as long as the subsequent evidence is arguably consistent with, or at least not clearly inconsistent with, the reviewer's assessment.  Anderson v. Astrue, No. 1:11-cv-476-DBH, 2012 WL 5256294, at *3 (D. Me. Sept. 27, 2012), adopted, 2012 WL 5252259 (D. Me. Oct. 23, 2012), aff'd, (1st Cir. June 7, 2013).

These principles are applicable in childhood cases.  When the non-examining physician's opinion is consistent with later developed evidence, including the assessment of a teacher who observed the child's functional capacity daily over an extended period, the ALJ does not err in relying on the non-examining opinion.  Turner o/b/o AT v. Comm'r of Soc. Sec. Admin., No. 2:17-CV-13523, 2019 WL 759291, at *5 (E.D. Mich. Feb. 1, 2019), adopted sub nom. Turner o/b/o AT v. Comm'r of Soc. Sec., 2019 WL 698931 (E.D. Mich. Feb. 20, 2019).  On the other hand, if the teacher's opinion might cause the initial opinions from the non-examining sources to change, remand is required.  Buckhanon ex rel. J.H. v. Astrue, 368 F. App'x 674, 679 (7th Cir.

2010); see Veneranda B. o/b/o AGB v. Saul, No. 4:19-CV-5074-EFS, 2020 WL 3620080, at *4-5 (E.D. Wash. Mar. 13, 2020) (remand required because of "significant development of the medical and educational record" since state agency consultants and non-examining medical expert conducted their reviews); Sircely o/b/o J.C.S. v. Berryhill, Civil Action No. 17-71, 2018 WL 783727, at *3 & n.6 (W.D. Pa. Feb. 8, 2018) (psychological consultant findings may be given great weight when they are consistent with longitudinal treatment history, school records and teacher questionnaires submitted after their review, but expert opinions must be updated when such new evidence might cause initial opinions to change).

### IV.    Analysis

In passing, Plaintiff argues that the ALJ erred in relying on the non-examining expert psychologists' prior administrative findings because they were based on an examination performed more than a year before the hearing and the records they saw did not include the more severe limitations reflected in Plaintiff's 2020-2021 report card, which assessed him as not meeting expectations in the behavioral areas of following directions, working well with others and demonstrating self-control. ECF No. 10 at 8. Plaintiff also contends that the ALJ erred in finding Ms. Avila's opinion minimally persuasive because it clashes with the educational and medical records even though Ms. Avila was Plaintiff's special education teacher during the period covered by the report card.[7]  Id. at 9.

---

[7] Reading a single sentence in the ALJ's decision out of context, Plaintiff also contends that the ALJ considered only the medical evidence. ECF No. 10 at 8. This is simply wrong; the decision is clear that the ALJ carefully and appropriately considered all categories of evidence. In addition, Plaintiff points to a single note in one provider's medical record that Plaintiff was "not very cooperative," Tr. 278, ignoring the same provider's subsequent notation that Plaintiff was cooperative, e.g., 279, 453, to argue that the ALJ somehow erred in finding (correctly) that Plaintiff was cooperative during the examination by Dr. Unger. ECF No. 10 at 9-10. Neither of these arguments will be addressed further.

13

Despite Plaintiff's failure to develop this argument,[8] <u>Ruben M. v. Saul</u>, C.A. No. 19-119MSM, 2020 WL 39037, at *10 (D.R.I. Jan. 3, 2020), <u>adopted,</u> C.A. No. 1:19-CV-00119-MSM-PAS, 2020 WL 555186 (D.R.I. Feb. 4, 2020), I find that this case must be controlled by the well-settled principle that remand for further proceedings is required if the ALJ's decision is based on the administrative medical findings of "state-agency [experts who] were not privy to parts of [plaintiff's] . . . record [which] detracts from the weight that can be afforded their opinions."  <u>Andrea T. v. Saul</u>, C.A. No. 19-505WES, 2020 WL 2115898, at *5 (D.R.I. May 4, 2020) (alteration in original) (quoting <u>Ruben M.</u>, 2020 WL 39037, at *9).  In that regard, the Social Security regulations require that the ALJ must "consider whether new evidence . . . receive[d] after the . . . prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." 20 C.F.R. § 416.920c(c)(5); <u>Tegan S. v. Saul</u>, 546 F. Supp. 3d 162, 168-69 (D.R.I. 2021).  When sources opine based on review of a materially incomplete record, it is error for the ALJ to find them persuasive and rely on them, as the ALJ did here.  <u>See</u> <u>Ogannes B. v. Kijakazi</u>, C.A. No. 22-325WES, 2023 WL 5561108, at *11 (D.R.I. Aug. 29, 2023).

The Commissioner argues that, in this case, the ALJ did not ignore the post-file review evidence, but carefully considered it as the regulation requires; based on this consideration, he contends that the ALJ supportably found it to be consistent with the records reviewed by the non-examining expert psychologists.  I do not agree.  While the Commissioner is right that the ALJ did consider most of the new evidence, his lay analysis of it is tainted by error.  For example, his

---

[8] Because of this serious deficiency, the Commissioner understandably did not address this issue in his brief.  Thus, the Court faced the Hobson's choice of ignoring the argument as waived or of conducting further proceedings.  I chose the latter course, having a hearing on January 25, 2024, and allowing the parties to file supplemental authority with cases bearing specifically on the issue.

14

review of the report card focuses on Plaintiff's academic performance (which improved and approached or met expectations, supporting the lack of material limits in the domain of acquiring and using information) but ignores that several of Plaintiff's key behavioral scores did not improve but remained stuck at "Does Not Meet," the lowest level. Tr. 20, 246-52. Consistent with this error, the ALJ found minimally persuasive the special education teacher's opinion even though it appears to be consistent with and corroborated by the report card that was prepared by another classroom teacher. Tr. 21-22, see Tr. 246-52. Also troubling is the ALJ's treatment of Plaintiff's renewed need for intensive OT services, which he bats aside because the OT records reflect improvement in that Plaintiff made "steady" and at times "great" progress. Tr. 21-22, 755. What the ALJ ignored is that the OT record seen by the non-examining psychologists reflected that Plaintiff completed the first course of OT and did not continue to need it; these experts did not know that Plaintiff again was found to need this intensive intervention to address not just his limited ability to move/manipulate objects but also his ability to engage in selfcare (such as dressing), an intervention that unimpaired peers of the same age do not require. And the ALJ does not appear to have considered Plaintiff's need (by contrast with the needs of unimpaired peers) for the FSRI treatment plan with its references to aggressiveness (a behavior missing from the earlier record) and impulsivity. See Tr. 457-66. In short, I find that this is a case where the material that the expert psychologists were not privy to plainly detracts from the weight that can be afforded to their opinions and raises a serious question whether, had they seen it, it might have caused their findings to change. See Virgen C., 2018 WL 4693954, at *2-3; Sircelys o/b/o J.C.S., 2018 WL 783727, at *3 & n.6.

      To illustrate, in opining to less-than-marked social limits, the non-examining psychologists relied on Dr. Unger's reference to "difficult interactions" with teachers and peers

and noted Plaintiff's "disruption at school," but also emphasized "no indication of aggressive or hostile b[ehavior] towards peers." Tr. 76, 83, 244. Might these psychologists have found a marked social impairment if they had known of Plaintiff's report card score ("Does Not Meet") in the area of "working well with others," of his special education teacher's assessment of marked social limits, of the FSRI treatment plan's reference to aggressive behavior and need for intervention in social functioning and of the OT provider's notes regarding violence towards teacher, peers and self? Or would these experts find this evidence sufficiently consistent with Dr. Unger's findings (lack of friends and difficulties in interacting with teachers and peers) that their findings would not change? Similarly, the non-examining psychologists relied on Plaintiff's success with the first round of OT to find less-than-marked limits in the ability to move and manipulate objects and the ability to care for himself. Might they have found marked limits in either or both of these domains if they had been aware that a second round of intensive OT was found to be necessary not only to address lack of coordination, body weakness and balance, but also Plaintiff's inability to dress himself and his lack of emotional control? And might their opinion of less-than-marked limits with attention and concentration have been affected if they had known that both of Plaintiff's kindergarten teachers found serious issues in this domain in that one teacher (Ms. Avila) opined to marked limits, while the other teacher scored Plaintiff as "does not meet" in the areas of following directions and demonstrating self-control and noted his need for "many reminders and prompting to control his body and his words"? Tr. 246.

This analysis also compels the conclusion that the ALJ's dismissal of Ms. Avila's opinion as minimally persuasive is flawed. Essentially the ALJ relies on his lay opinion that it clashes with and therefore is not supported by the contemporaneous education records (the 2020-2021

16

report card, the OT records and the educational interventions reflected in the 2021 FSRI treatment plan), as well as the clinical observations in the FSRI plan.  See Tr. 20-22.  To me, also a lay adjudicator who – like the ALJ – lacks the expertise in any area of relevant specialty, such a conclusion seems well beyond a lay analysis in these circumstances.  Although a teacher is a nonmedical source, an opinion like this one (from a teacher who has specialized training in special education and had the opportunity to carefully observe the claimant's behavior day after day in an informal setting in multiple content areas) should be considered by someone with the appropriate expertise to determine whether it is supported by the contemporary educational and medical records.  See Stephanie T. o/b/o A.M.T.F. v. Comm'r of Soc. Sec., 1:20-CV-916 (JLS), 2022 WL 3087948, at *4 (W.D.N.Y. Aug. 2, 2022).

      Because I find that it is impossible without expertise to determine whether the severity of Plaintiff's limited ability to function once he entered school is consistent with the preschool record on which the non-examining psychologists relied, I conclude that remand is necessary to allow an expert to review these records.  Mindful that "[t]he First Circuit has stated that courts should ensure 'a just outcome' in Social Security disability claims," Mary K v. Berryhill, 317 F. Supp. 3d 664, 667 (D.R.I. 2018), and that "the Social Security Act is to be construed liberally to effectuate its general purpose of easing the insecurity of life," Rodriguez v. Celebrezze, 349 F.2d

494, 496 (1st Cir. 1965), I recommend that this case be remanded for further proceedings (not for an award of benefits)[9] regarding these questions.[10]  Tegan S., 546 F. Supp. 3d at 168.

V.     **Conclusion**

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) be GRANTED and Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 15) be DENIED.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 29, 2024

---

[9] Although Plaintiff alternatively asks for such relief, this is far from being a case in which an award of benefits should be considered.  Such a judicial award "is rarely appropriate" except in extraordinary circumstances when either the proof is overwhelming, or the proof is very strong and there is no contrary evidence.  Ogannes B., 2023 WL 5561108, at *2, *12; see Seavey v. Barnhart, 276 F.3d 1, 11, 13 (1st Cir. 2001) (award of benefits appropriate "if correcting the legal error clarified the record sufficiently that an award or denial of benefits was the clear outcome.").  None of these is true in this case.  To the contrary, with Plaintiff's ability to be maintained in a regular classroom and his improvement (per his report card) in physical education, organizational skills, respect for peers and the ability to share, it remains possible that examination of the 2021 educational and medical records by a non-examining expert psychologist might result in the same findings supporting the same conclusion, that Plaintiff is not disabled.

[10] Ms. Avila and the non-examining expert psychologists agreed that Plaintiff's limits in the domain of acquiring and using information is less than marked, a finding that is confirmed by the 2020-2021 report card.  Further, Ms. Avila did not opine regarding Plaintiff's limitations in the domain of health and physical well-being while the non-examining expert physicians found such limits to be less than marked.  There is no contrary evidence.  Therefore, I find no error in the ALJ's determination regarding these domains and my recommendation of remand does not encompass further inquiry regarding them.